350 U.S. 155 (1956)
LOCAL UNION NO. 25 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA ET AL.
v.
NEW YORK, NEW HAVEN & HARTFORD RAILROAD CO.
No. 33.
Supreme Court of United States.
Argued November 10, 1955.
Decided January 9, 1956.
CERTIORARI TO THE SUPERIOR COURT OF MASSACHUSETTS.
*156 Stephen J. D'Arcy, Jr. argued the cause for petitioners. With him on the brief were John D. O'Reilly, Jr. and Richard S. Sullivan.
Herbert Burstein argued the cause for respondent. With him on the brief was William T. Griffin.
MR. JUSTICE MINTON delivered the opinion of the Court.
Respondent railroad has, since 1937, engaged in hauling, between Boston, Massachusetts, and other points in New England, loaded trailers of the type ordinarily hauled over the highways by motor carriers. This operation is popularly known as "piggy-backing." Trailers to be shipped from Boston are delivered to respondent's freight yard by employees of the motor carriers. There they are detached from the tractors and driven by special devices onto respondent's flatcars by employees of New England Transportation Co., a motor carrier, which is a subsidiary of respondent. The trailers are secured to the flatcars by respondent's employees.
Petitioners are the local teamsters union, one of its officers and two of its business agents. The union, by virtue of collective-bargaining agreements, represents a large number of drivers and helpers of certain motor carriers which are engaged in over-the-road hauling of freight between Boston and other points in New England. Respondent's "piggy-backing" operations have steadily increased over the years, with a resulting loss of work for truck drivers. The union sought, without success, in 1946, and again in 1949, an agreement by the motor carriers to cease shipping trailers by "piggy-back." Having failed in these and subsequent negotiations to dissuade the trucking companies from participating in "piggy-backing," petitioner union assigned petitioners Norton and McCarthy, business agents of the union, to patrol *157 the entrance to respondent's Yard 5 where trailers are delivered for "piggy-back" operations.
On July 11, 12 and 14, 1952, Norton and McCarthy stopped a number of truck-drawn trailers owned by carriers with whom petitioner union had collective-bargaining agreements and persuaded the drivers to refrain from delivering the trailers to respondent. Employees of New England Transportation Co. were persuaded by Norton and McCarthy not to load previously delivered trailers onto respondent's flatcars.
Respondent filed suit in the Superior Court of Suffolk County, Massachusetts, seeking permanently to enjoin petitioners' conduct and, in addition, damages in the sum of $100,000. In its amended complaint respondent alleged, among other things:
". . . the individual respondents and the respondent union prevented the loading of trailers on flat cars and enforced a boycott against petitioner and a withholding of patronage and services by motor truck carriers and shippers.
.....
"The petitioner is informed and believes that the object of the acts committed by the respondents on July 11, 12 and 14, 1952, as set forth in paragraphs `8' and `9' of this complaint was to force or require the petitioner to cease handling and transporting the products of various shippers and motor carriers who employ petitioner's flat car service.
.....
"The said acts were and are intended to compel shippers and motor truck carriers to assign work to members of the respondent union and to thereby commit an unfair labor practice in violation of the National Labor Relations Act; and

*158 "The said acts were intended to and did, in fact, result in an unlawful secondary boycott in violation of the laws of the Commonwealth of Massachusetts, and of Section 8 (b) (4) (A) of the National Labor Relations Act; . . . ."[1]
After hearing, a permanent injunction was granted and, on appeal, the Supreme Judicial Court of Massachusetts affirmed. 331 Mass. 720, 122 N. E. 2d 759. We granted certiorari to determine whether the state court had jurisdiction to enjoin the petitioners' conduct or whether its jurisdiction had been pre-empted by the authority vested in the National Labor Relations Board. 348 U. S. 969.
Resolution of this question depends upon (1) whether respondent, as a railroad subject to the Railway Labor Act, may avail itself of the processes of the N. L. R. B., and (2) if respondent may do so, was it required, in the circumstances of this case, to seek relief from that tribunal rather than from the state courts.
The Massachusetts court, although recognizing the principle that state courts ordinarily lack authority to enjoin alleged unfair labor practices affecting interstate *159 commerce,[2] determined that it had jurisdiction in this controversy to restrain petitioners' conduct because the Labor Management Relations Act's definition of "employer," as interpreted by the N. L. R. B., cast doubt upon respondent's ability to obtain relief under that Act.
The Act, in its definition of an "employer," expressly excludes anyone subject to the Railway Labor Act. 61 Stat. 137, 29 U. S. C. § 152 (2).[3] It is of course true that employer-employee relationships of railroads such as respondent are governed by the Railway Labor Act,[4] which was passed before either the National Labor Relations Act or the Labor Management Relations Act. Neither of the latter Acts was intended to tread upon the ground covered by the Railway Labor Act. It is clear that neither railroads nor their employees may carry their grievances with one another to the N. L. R. B. for resolution. But it does not follow from this that a railroad is precluded from seeking the aid of the Board in circumstances unrelated to its employer-employee relations. Respondent itself has maintained throughout the entire course of this litigation that there is no labor dispute with *160 its employees. The Massachusetts court found that petitioner union was in no way concerned with respondent's labor policy, nor was there any claim that the union interfered in any manner whatsoever with the railroad employees.
The N. L. R. B. is empowered to issue complaints whenever "it is charged" that any person subject to the Act is engaged in any proscribed unfair labor practice. § 10 (b). Under the Board's Rules and Regulations such a charge may be filed by "any person."[5] We think it clear that Congress, in excluding "any person subject to the Railway Labor Act" from the statutory definition of "employer," carved out of the Labor Management Relations Act the railroads' employer-employee relationships which were, and are, governed by the Railway Labor Act. But we do not think that by so doing Congress intended to divest the N. L. R. B. of jurisdiction over controversies otherwise within its competence solely because a railroad is the complaining party. Furthermore, since railroads are not excluded from the Act's definition of "person," they are entitled to Board protection from the kind of unfair labor practice proscribed by § 8 (b) (4) (A). This interpretation permits the harmonious effectuation of three distinct congressional objectives: (1) to provide orderly and peaceful procedures for protecting the rights of employers, employees and the public in labor disputes so as to promote the full, free flow of commerce, as expressed in § 1 (b) of the Labor Management Relations Act; (2) to maintain the traditional separate treatment of employer-employee relationships of railroads subject to *161 the Railway Labor Act; and (3) to minimize "diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." Garner v. Teamsters Union, 346 U. S. 485, 490.
Respondent contends, however, that even if railroads may seek the aid of the N. L. R. B., it was not required to do so in this case because petitioners' conduct was neither protected by § 7 nor prohibited by § 8 (b) (4) of the Labor Management Relations Act. As we noted earlier, respondent's amended complaint alleged violations of the Act. Whether the Act was violated or whether, as respondent now claims, it was not, is, of course, a question for the Board to determine. Even if petitioners' conduct is not prohibited by § 8 of the Act, it may come within the protection of § 7, in which case the State was not free to enjoin the conduct. In any event, the Board's jurisdiction in the circumstances of this case is clearly settled by this Court's recent decision in Weber v. Anheuser-Busch, Inc., 348 U. S. 468, 481:
"But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."
We therefore hold that the question presented by the facts in this case brings it within the jurisdiction of the N. L. R. B., whose jurisdiction is exclusive, and the respondent railroad may seek any remedy it may have before said Board.
The judgment is
Reversed.
NOTES
[1] Section 8 (b) (4) (A) provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents
.....
"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; . . . ." 61 Stat. 141, 29 U. S. C. § 158 (b) (4) (A).
[2] Garner v. Teamsters Union, 346 U. S. 485; Weber v. AnheuserBusch, Inc., 348 U. S. 468.
[3] "SEC. 2. When used in this Act

.....
"(2) The term `employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."
[4] 44 Stat. 577, as amended, 45 U. S. C. § 151.
[5] 29 CFR, 1955 Cum. Supp., § 102.9. The Act defines "person" as follows:

"SEC. 2. When used in this Act
"(1) The term `person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."