**W. T. SMITH LUMBER COMPANY,**
Appellant,

v.

**NATIONAL LABOR RELATIONS BOARD,** Appellee.

No. 16487.

United States Court of Appeals
Fifth Circuit.

June 21, 1957.

Rehearing Denied Aug. 7, 1957.

**130**

Helen F. Humphrey, Washington, D. C., Calvin Poole, Greenville, Ala., for appellant.

Norton J. Come, Atty., N.L.R.B., Washington, D. C., Stephen Leonard, Associate Gen. Counsel, Jerome D. Fenton,

General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, Washington, D. C., Irving M. Herman, Attys., N.L. R.B., Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board[1] dismissing a complaint by a petitioner alleging that the International Woodworkers of America, AFL–CIO, had violated section 8(b)(4)(A) of the National Labor Relations Act,[2] as showing on its face that no violation of the Act had occurred. The complaint charged that the union had induced employees of the Louisville and Nashville Railroad to engage in a strike, etc. with the object of forcing the railroad to cease doing business with the petitioner.[3] A complaint was issued by the Board's Regional Director, on behalf of the General Counsel, but was subsequently dismissed by the trial examiner, whose order was affirmed by the Board on the ground that because of the exclusionary provisions of the definitions sections of the Act, particularly sections 2(2) and 2(3),[4] it is not a violation of section 8(b)(4)(A) to induce the employees of an employer subject to the Railway Labor Act[5] (i.e. a railroad) to participate in a secondary boycott.

The legal issue here present is identical to the one passed on by this Court in its opinion in International Rice Milling

---

1. 116 N.L.R.B. 1756.

2. 29 U.S.C.A. § 158(b) (4) (A).

3. The pertinent portion of the charge reads as follows:
   "Since on and after November 15, 1955, International Woodworkers of America— AFL–CIO and its Locals S–426 and S– 429 have engaged in a strike and have induced and encouraged, and are now inducing and encouraging, the employees of the Louisville & Nashville Railroad to engage in a strike and in a concerted refusal in the course of their employment to process, transport, or otherwise handle or work on goods, articles, materials or commodities or to perform services with an object of forcing or requiring the said Louisville & Nashville Railroad to cease handling, transporting or otherwise dealing in the products of W. T. Smith Lumber Company and to cease doing business with said W. T. Smith Lumber Company, in violation of Section 8(b) (4) (A) of the Taft-Hartley Act."

4. 29 U.S.C.A. § 152(2, 3).

5. 45 U.S.C.A. § 151 et seq.

Co. v. National Labor Relations Board.[6] No other appellate adjudication of this point has been called to our attention,[7] but the Board itself has never been content with this decision [8] and, having criticized it a number of times,[9] took the first available opportunity to reaffirm its contrary position by its opinion in Local 833, UAW, AFL-CIO (Paper Makers Importing Co.) [10] On the authority of that case the trial examiner and the Board made the decision here appealed from, noting their disagreement with this Court.[11]

The Board, in asking us to reverse our previous position, takes direct issue, as under the circumstances it must, with much of the reasoning in the Rice Milling opinion. One principal new point is advanced: that even if the word "employer" in section 8(b) (4) is not considered to be limited by the definition set forth in section 2(2), because of the article "any" which precedes it and because of

6. 5 Cir., 183 F.2d 21, reversing and remanding 84 N.L.R.B. 360, reversed in part on other grounds, 341 U.S. 665, 71 S. Ct. 961, 95 L.Ed. 1277, on remand, 95 N.L.R.B. 1420.

7. The decision in Di Giorgio Fruit Corp. v. National Labor Relations Board, 89 U.S.App.D.C. 155, 191 F.2d 642, 28 A.L.R.2d 377, involves an entirely different point, for there the court held that the Board had no authority over a secondary boycott induced by a labor organization composed of agricultural laborers (because of the interaction of §§ 2(3), and 8(b) of the Act) since there the impact of the Board's order would necessarily have fallen directly on an organization exempt from its jurisdiction, while here and in the Rice Milling case the petitioner and the charged party are both subject to Board jurisdiction, and only the third parties the union is attempting to involve in the secondary boycott are exempt from the provisions of the Act.

8. The Board explains that certiorari as to this point was not applied for (see 341 U.S. at pages 668–669, footnote 2, 71 S. Ct. at page 962), because it considered another point in the case of more immediate importance and did not wish to prejudice its consideration.

9. See, e. g. Al J. Schneider Co., 87 N.L. R.B. 99; Sprys Electric Co., 104 N.L. R.B. 1128, whose specific holdings, however, a majority of the Board now believes to have been overruled by the Supreme Court in Local Union No. 25 of International Brotherhood of Teamsters, etc., v. New York, New Haven & Hartford R.R., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166; see Local Union No. 313, Int'l Brotherhood of Electrical Workers (Furness Electric Co.), 117 N.L.R.B. No. 60.

10. 116 N.L.R.B. 267. The Board there held that inducing employees of the City of Milwaukee to strike, etc. in pursuance

of a secondary boycott directed ultimately against the Kohler Company and others was not a violation of § 8(b) (4) (A) of the Act because States and political subdivisions thereof are not employers, and their personnel are not employees, within the meaning of the definitions sections of the Act (the exclusion in §§ 2(2, 3) being parallel to that of the railroads and their employees), and thus inducements directed toward such workers are not within the prohibition of § 8(b) (4); the General Counsel opposed this view and one member of the Board dissented, both relying on our opinion in the Rice Milling case, supra, which had considered the effect of the analogous exclusion of railroads and their employees from the operation of the Act. It should be noted that the Board has recently rejected a possible ground for distinction between the Rice Milling (as well as the instant) case involving railroads and the Paper Makers case involving a municipality, in that the majority in the Furness Electric Co. case, supra footnote 9, held (over a vigorous dissent) that governmental organizations are as much "persons" within the meaning of § 8(b) (4) (A) of the Act as are the railroads, even though § 2(1) of the Act defines "person" to include corporations but not governmental units, and the New Haven case, supra footnote 9, on which the majority purported to rely, dealt only with the status of railroads as "persons."

11. One dissenting member again supported the position of the General Counsel (i. e. the position the General Counsel took before the trial examiner and before the Board) that our decision in the Rice Milling case is controlling. Cf. Stacey Mfg. Co. v. Commissioner of Internal Revenue, 6 Cir., 237 F.2d 605; we note, but do not here decide the possible implications of the reasoning in that case on the analogous problems of appellate review of decisions of the National Labor Relations Board.

the modifying phrase "or other person" appearing in section 8(b) (4) (A), there is no similar justification for holding that the word "employees" in section 8 (b) (4) can be given a scope unlimited by section 2(3). However, this argument does not raise a really novel question since section 2(3) relates to status of the employee to that of the employer (i. e. it excludes "any individual employed by an employer subject to the Railway Labor Act"), and having determined that in the phrase "the employees of any employer" the term "employer" is not used in the limited sense, we cannot logically hold otherwise for the term "employees." We note that in Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, at page 191, 61 S.Ct. 845, 851, 85 L.Ed. 1271, the Supreme Court preferred to pursue "the central clue to the Board's powers—effectuation of the policies of the Act" instead of applying rigidly the restrictive definition of employees to section 10(c) of the Wagner Act (an interpretation which received the tacit approval of Congress during the 1947 revisions). In the Rice Milling case we noted that the purpose of Congress in enacting section 8(b) (4) (A) of the Act was to protect commerce from injury and interruption due to obstructions like the one alleged here, and that though Congress was careful to keep out of the purview of the Act the labor relations problems subject to the Railway Labor Act, the above purpose of Congress would be frustrated if [183 F.2d 25] "the industry most directly and extensively concerned with commerce," the railroads and their employees, could not be isolated from secondary boycotts resulting from labor-management conflicts "in which they have no interest and want no part," insofar as no dispute between the railroad and its employees is involved. We feel strengthened in this view, by the approach of the Supreme Court in Local Union No. 25 of International Brotherhood of Teamsters, etc., v. New York, New Haven & Hartford R.R., 350 U.S. 155, 76 S.Ct. 227, which dealt with a related though not directly relevant problem, since our interpretation too would permit:

"* * * the harmonious effectuation of [the same] three congressional objectives: (1) to provide orderly and peaceful procedures for protecting the rights of employers, employees and the public in labor disputes so as to promote the full, free flow of commerce, as expressed in § 1(b) of the Labor Management Relations Act [29 U.S.C.A. § 141 (b)]; (2) to maintain the traditional separate treatment of employer-employee relationships of railroads subject to the Railway Labor Act; and (3) to minimize 'diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.'" 350 U.S. at pages 160–161, 76 S.Ct. at page 231. (Brackets added.)

while the Board's interpretation would entirely neglect the first and perhaps the third objective, without at all advancing the second.

On the authority of the Rice Milling case we reverse the dismissal of the complaint and remand the case to the National Labor Relations Board for action not inconsistent with this opinion; at the present time we do not believe it necessary to accede to petitioner's request for interim relief, for upon remand the Board will presumably enter any needful orders.[12]

On Motion for Rehearing

PER CURIAM.

The motion for interlocutory injunction, being considered as a motion for rehearing as to the concluding part of the opinion, is, upon consideration, Denied.

12. Cf. the Board's action on the remand of the Rice Miling case, 95 N.L.R.B. 1420.