**SWIFT & COMPANY, a Corporation, Plaintiff-Respondent,**

and

**Missouri Pacific Railroad Company, a Corporation, Intervening Plaintiff-Respondent,**

v.

**John DOE et al. (whose names are otherwise unknown to plaintiff);**

**Nicholas M. Blassie; August Gieseke, individually and as representatives of Local Union No. 88;**

and

**Local Union No. 88, Amalgamated Meat Cutters and Butchers Workmen of North America, AFL-CIO, Defendants-Appellants.**

No. 45973.

Supreme Court of Missouri, Division No. 1.

March 10, 1958.

---

Norman W. Armbruster, Harry H. Craig, St. Louis (Wiley, Craig, Armbruster, Schmidt & Wilburn, of counsel), St. Louis, for appellants.

G. Carroll Stribling, Harold A. Thomas, Jr., Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for respondent, Swift & Co.

Harold L. Harvey, St. Louis, for respondent, Missouri Pac. R. Co.

HOLMAN, Commissioner.

Plaintiff, Swift & Company, instituted this action to enjoin the defendants from picketing its St. Louis, Missouri plant which is known as the St. Louis Independent Packing Company. The trial court granted a permanent injunction and defendants have duly appealed from that decree.

Since we have determined that we do not have appellate jurisdiction of this case, our factual statement will not be as complete as it would otherwise be. However, we will attempt to state such portions of the pleadings and evidence as to disclose the issues determined in the trial court and the issues briefed and preserved for review in this court.

The plant involved in this case is one of the largest packing plants in the country and plaintiff employs, in the operation thereof, approximately 2,400 employees. About 2,000 of its employees belong to the Packing House Workers Union and its truck drivers (about 40) are represented by Local 700, Packing House Chauffeurs, Warehousemen and Helpers of America. No dispute existed between plaintiff and the aforementioned unions at the time of the occurrences hereinafter detailed. The testimony indicated that plaintiff had on hand in its St. Louis plant approximately 12 million pounds of meat products at all times which were in various stages of processing involving from a few days to as long as 120 days. Its cold storage capacity was 3,800,000 pounds and the same was substantially full at all times.

The defendants are officers and members of Local Union 88, Amalgamated Meat Cutters and Butchers Workmen of North America, hereinafter referred to as the Union. That union is not incorporated and the defendants were named as representatives of the entire membership of the union. In the spring of 1952, the union started upon a campaign to organize the "white-collar salesmen" employed by various St. Louis packing houses. The employees involved in this case are plaintiff's thirty-one city salesmen who call upon the retail stores in the greater St. Louis area.

On May 15, 1952, the secretary of the union sent a letter to the plaintiff advising that the union was interested in persuading these salesmen to apply for membership in the union and that the union was contemplating establishing a picket line at the company premises in an effort to enlist public support and influence in bringing about the affiliation of these employees with the union. However, the union did not picket at that time but temporarily changed its method of approach and requested its members that were employed in markets in the St. Louis area to solicit the salesmen to become union members. In the following fifteen months the union was successful in organizing the salesmen of all but the three largest packing plants in the St. Louis area. That campaign involved picketing at the plant of the Krey Packing Company.

On September 2, 1953, the secretary of the union sent another letter to the plaintiff advising that the union intended to begin picketing the premises on September 10 for the purpose of publicizing the fact that plaintiff's salesmen were nonunion. He also stated that notice of the intention to picket was given at that time in order that plaintiff could make arrangements for handling its perishable products. On September 10, 1953, pickets were placed at transportation entrances into the plaintiff's premises and the picketing was maintained on a 24-hour basis. No pickets were placed at entrances used by the 2,400 employees of the plant or the entrance to the company's test kitchen which is visited by large numbers of housewives. The result of the picketing was to make it difficult for plaintiff to make delivery of its products to retail outlets. The company's forty truck drivers refused to cross the picket line, as did a large percentage of the drivers for commercial trucking companies. Pickets had been placed on Spring Avenue just north of the Missouri Pacific Railroad track which entered the plaintiff's plant. Ordinarily, the railroad would handle the switching involved in icing, loading, reicing and shipping out approximately 200

refrigerator cars of meat per day from that plant. As a result of the picketing the regular crews of the railroad refused to cross the picket line and, after some delay, the railroad company was able to obtain supervisory employees who handled at least a part of that switching. As a result of the picketing plaintiff was unable to obtain transportation facilities for a considerable part of its products that were ready for shipment to purchasers.

On the following day, September 11, plaintiff filed the instant action and obtained a temporary restraining order, as a result of which the pickets were withdrawn about 7 p. m. on that day.

Plaintiff in its petition alleged that "the sole purpose of the picketing activities of defendants herein described is to force, influence, threaten, coerce, and intimidate the said salesmen employed by plaintiff to join defendant union, contrary to the express provisions of the Labor Management Relations Act (Taft-Hartley Act) [29 U.S. C.A. § 141 et seq.], and the law of the State of Missouri, and to force, influence, threaten, coerce, and intimidate plaintiff to influence and coerce the said salesmen to join the said defendant union, contrary to the express provisions of the Taft-Hartley Act and the law of the State of Missouri, and Section 29 of Article I of the Constitution of Missouri [V.A.M.S.]." It was also alleged by plaintiff and admitted by defendants that "plaintiff is engaged in Interstate Commerce and that both plaintiff and its employees are subject to the provisions of the Labor Management Relations Act of 1947 (Taft-Hartley Act)."

On October 22, 1953, the court made an order permitting the Missouri Pacific Railroad Company to file a petition as an intervening plaintiff. In that petition the railroad company alleged that the defendants had established the picket line knowing that the employees of the intervening plaintiff would not pass such pickets and that establishment of said picket line would prevent the intervening plaintiff from com-

plying with its duty to serve Swift & Company; that by the terms of certain designated laws of the State of Missouri and of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., intervening plaintiff was compelled to render efficient and indiscriminate service to plaintiff; that in an effort to comply with the law, the railroad used certain of its managerial officers in switching crews to serve said plant, but that the railroad could not continue to use such officers for that purpose for the reason that in the safe and efficient operation of the railroad its officers could not be taken from their important supervisory work to perform such switching services, and hence the railroad sought injunctive relief against such picketing.

Defendants in their answer admitted that they did not represent any of plaintiff's employees and did not claim the right to bargain for said employees. It was further alleged that if the allegations of plaintiff's petition as to the purpose of the picketing were true, such would constitute a violation of Section 7, as well as Section 8(b) (1) (2) of the Labor Management Relations Act of 1947, and such acts would constitute unfair labor practices and that, under the provisions of said Act, the means are provided for the prevention and correction of said unfair labor practices and that the processes of the Act are exclusive for the prevention and correction of said unfair labor practices; that "the field has been occupied and preempted by Congress, and that this court is therefore without jurisdiction to entertain plaintiff's petition."

It was further alleged that the picketing was done for the purpose of informing the public generally of the fact that plaintiff's salesmen were nonunion, and that the picketing was conducted in a peaceful, orderly, and lawful manner. It was also alleged that any order of the court denying defendants the right to picket under the circumstances existing would deprive defendants of their rights under certain designated sections of the Constitution of the United States and of the State of Missouri.

It is tacitly admitted that the picketing in this case was peaceful and orderly. It was admitted by the officials of the union that no steps had been taken to organize these city salesmen by talking with them, inviting them to meetings, or in any other way explaining the advantages they contended would result from union membership. After the temporary restraining order was entered there was considerable evidence to indicate that the officials of the union requested its 1,650 members who own, or are employed in, markets in the St. Louis area not to purchase products from plaintiff's salesmen, and the evidence indicates that this campaign was rather successful.

In the early part of November 1953 Judge Flynn, of the St. Louis Circuit Court, heard evidence on the question of whether or not a temporary injunction should be granted and the cause was taken under advisement and the restraining order continued in effect. Thereafter, in January 1954, the plaintiff filed two charges with the Regional Director of the National Labor Relations Board, one alleging unfair labor practices against the union, by reason of the picketing, in violation of Sections 8(b) (1) (A) and 8(b) (2), 29 U.S.C.A. Section 158, and the second alleging secondary boycott activities in violation of Section 8(b) (4) of said Act. The regional director investigated and considered the first charge and declined to take further action, stating, "It does not appear that further proceedings are warranted inasmuch as the charge alleges activities that do not fall within the scope of sections 8(b) (1) (A) and 8(b) (2)." This ruling was appealed to the general counsel who sustained the ruling of the regional director. The regional director, however, issued a complaint on the boycott charge and obtained the ruling of the board to the effect that such boycotting constituted an unfair labor practice and the union was ordered to cease and desist from such practices. This ruling was affirmed on appeal. Amalgamated Meat Cutters, etc. v. National Labor Relations Board, 99 U.S.App.D.C. 24, 237 F.2d 20.

It may also be noted that the National Labor Relations Board filed an action in the U. S. District Court seeking to restrain Swift & Company from enforcing the temporary restraining order obtained in the instant case. That relief was denied by the District Court, National Labor Relations Board v. Swift & Company, 130 F.Supp. 214, and that ruling (as to the result) was affirmed on appeal. 8 Cir., 233 F.2d 226.

Judge Flynn retired before any decision was entered concerning the issuance of the temporary injunction in the instant case, and the cause was assigned to another division of the circuit court. The cause was tried in October 1956. It was stipulated that said trial would constitute a hearing upon both the temporary and permanent injunctions. It was further stipulated that the trial judge could consider all of the evidence taken at the prior hearing before Judge Flynn, and that either party could read in evidence testimony taken in certain proceedings in the U. S. District Court. At the conclusion of the trial the court, as heretofore stated, entered a decree enjoining the defendants from picketing in the vicinity of plaintiff's plant or in the vicinity of the railroad tracks used by the intervening plaintiff in transporting property to and from the plant.

The primary contention of defendants upon this appeal is that the trial court had no jurisdiction over the subject matter because picketing for the purpose alleged in the petition was a violation of the Labor Management Relations Act, and the National Labor Relations Board was the exclusive primary tribunal to determine the controversy (see Graybar Electric Co. v. Automotive, Petroleum & Allied Industries Employees Union, 365 Mo. 753, 287 S.W.2d 794, and cases cited therein). For their second point defendants contend that (assuming the trial court had jurisdiction), neither the petition nor the evidence was sufficient to support injunctive relief on the theory that there was a violation of Section 29, Article I, Constitution of Missouri 1945.

Other assignments in the appellants' brief concern alleged deficiencies in the proof and trial errors, which, in the view we take of this appeal, need not be noticed further.

■ Although our appellate jurisdiction is not questioned, we must raise and determine that question. Metzger v. Metzger, Mo.Sup., 145 S.W.2d 380. We quote from defendants' jurisdictional statement wherein they state that they "pleaded in their answer that to deny picketing under the circumstances of this case would violate rights guaranteed by Sections 8, 9 and 29 of Article I, Constitution of Missouri 1945, and by the First and Fourteenth Amendments to the United States Constitution; further, that the trial court had no jurisdiction over the subject matter of the action because Congress had granted exclusive jurisdiction thereof to the National Labor Relations Board. Thus, jurisdiction of this appeal is conferred on this court * * *." However, as previously indicated, the only constitutional provision mentioned or cited in the "Points Relied Upon and Authorities" in defendants' brief is Section 29, Article I, Constitution of Missouri 1945, V.A. M.S. (hereinafter referred to as Section 29), which reads as follows: "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

■ In determining questions concerning our appellate jurisdiction we look to Section 3, Article V of our constitution which provides, in part, as follows: "The supreme court shall have exclusive appellate jurisdiction in all cases involving *the construction* of the Constitution of the United States or of this state, the validity of a treaty or statute of the United States, or any authority exercised under the laws of the United States, * * * and until otherwise provided by law, in all cases where the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars." (Italics ours.) We have heretofore stated that, "In cases involving the

appellate jurisdiction of this court, we have sedulously retained to ourselves the right to look within the shell of briefs, pleadings, and transcript to the kernel of the thing, to see if the jurisdictional question is of substance; for to give life to a jurisdictional question it must be real, not colorable only." Junkins v. Local Union No. 6313, etc., Mo.Sup., 263 S.W.2d 337, 339. Also, we have said that "in order to preserve a constitutional question for review the question must be raised at the first available opportunity; the sections of the constitution claimed to have been violated must be specified; the point must be presented in the motion for a new trial, if any; and it must be adequately covered in the briefs." Ingle v. City of Fulton, Mo. Sup., 260 S.W.2d 666, 667. The rule is also settled that we will not assume jurisdiction of a case on the ground that a constitutional question is involved when the identical question sought to be invoked has been settled by prior decisions of the Supreme Court. City of Marshfield ex rel. and to Use of Hasten v. Brown, 337 Mo. 1136, 88 S.W.2d 339; Metzger v. Metzger, supra.

■ Assuming (for the sole purpose of determining our appellate jurisdiction) that the circuit court had jurisdiction of the subject matter of this action, we think it may fairly be said that the real and fundamental issue tried in that court was whether or not the picketing was unlawful in that it was for the purpose of forcing plaintiff to coerce its salesmen into joining the union, and selecting it as their bargaining representative, contrary to the provisions of Section 29 and the Labor Management Relations Act, supra. In that connection it may be stated that we have repeatedly held that picketing for that purpose is violative of the free choice guaranteed to employees by Section 29. Quinn v. Buchanan, Mo. Sup., 298 S.W.2d 413; American Hotel Co. of Mo. v. Bartenders' International League of America, Mo.Sup., 297 S.W.2d 411; Bellerive Country Club v. McVey, 365 Mo. 477, 284 S.W.2d 492; Tallman Co. v. Latal, 365 Mo. 552, 284 S.W.2d 547. No addition-

al construction of Section 29 is necessary in regard to that point and we do not understand that such is sought in defendants' brief.

■ It may also be noted that under Point II(D) of defendants' brief it is contended that the evidence would not support a finding that the picketing was for the purpose of forcing plaintiff to coerce its employees but that, at most, it would only support a finding that the picketing was for the purpose of forcing plaintiff to merely encourage its employees to join the union, which was not a violation of Section 29. That contention does not require a construction of Section 29, as plaintiff makes no contention that it would be a violation of that section for it to merely encourage its employees to join the union and, moreover, we have ruled in the cases heretofore cited that the use of lawful persuasion is not prevented by that constitutional provision.

However, under Point II(B), defendants point out that plaintiff's petition alleges that the purpose of the picketing was to force the employer to coerce the employees into joining defendants' union in violation of Section 29, and, in that connection, defendants contend that the petition does not state facts sufficient to constitute a claim against defendants because, "it is only coercion of employees in their choice of bargaining representative that is unlawful under that constitutional provision, and merely coercing employees to join a particular union is not violative thereof." Even if we assume that this contention would ordinarily call for a construction of Section 29, ·we rule that such is not required under the facts and circumstances existing in the instant case in order to determine the issue as to whether the petition stated facts which were sufficient to constitute a claim against the defendants.

■ In the first place it should be noted that it was assumed by the defendants in their answer, and by all parties throughout the trial, that the petition alleged that the

purpose of the picketing was to force plaintiff into coercing its employees into joining the union and choosing the union as their bargaining representative, or that the latter was encompassed within the allegation actually made. Note the following in defendants' answer: "These defendants state that the allegations of plaintiff's petition to the effect that the picketing has as one of its objectives the compelling of plaintiff to coerce its employees into becoming members of the union *or the coercing of plaintiff's employees in their right to be represented by representatives of their own choosing* alleges acts and conduct which, if true, constitute a violation of Section 7 as well as Section 8(b) (1) and (2) of the Labor Management Relations Act of 1947." (Italics ours.) Moreover, in the opening statement made by counsel for defendants at the time of the trial before Judge Mayfield, the following appears: "The pleadings themselves reveal that throughout this entire case both plaintiffs have contended in their pleadings that the object or purpose of the union undertaking was to exert sufficient economic pressure upon Swift & Company so as to force, by that economic pressure, Swift & Company to in turn coerce its employees, in the rights that the employees have, to stand and be *represented* by representatives of their own choosing. Counsel for Swift & Company repeated that position again this morning; the pleadings set it forth clearly and Your Honor will observe in the transcript (of Order to Show Cause Hearing) the position is repeatedly taken, namely, the activities of the Union sought to force Swift to coerce its employees in their rights to be or not to be *represented* by a Union of their own choosing."

It may also be noted that there was considerable evidence admitted (without objection on the ground that it was beyond the pleadings) from which it could reasonably be found that defendants were seeking to persuade plaintiff's employees to join the union so that it could act as their bargaining representative, and there was no evidence to the contrary.

■ Since defendants did not attack the petition in the trial court, and since the case was tried on the theory that coercion of the employees in their choice of the union as a bargaining representative was an issue, if (which we do not decide) such an allegation is necessary in order that the petition state a claim, it will be treated as amended in that respect. Section 509.500 RSMo 1949, V.A.M.S.; Woolfolk v. Jack Kennedy Chevrolet Co., Mo.App., 296 S.W. 2d 511.

■ Since it appears that it is not essential to a decision of the question concerning the sufficiency of the petition that we determine the only point raised by defendants which might require a construction of the constitution of this state, we rule, as heretofore indicated, that we do not have appellate jurisdiction on that ground. Rollins. v. Business Men's Accident Ass'n, Mo.Sup., 213 S.W. 52; Home Owners' Loan Corporation v. Caplan, 349 Mo. 353, 160 S.W.2d 754.

■ It is intimated in defendants' jurisdictional statement that we have appellate jurisdiction because the appeal involves. questions concerning the application of the Labor Management Relations Act, 1947, 29 U.S.C.A. Sections 141 et seq., and the alleged exclusive jurisdiction of the subject matter by the National Labor Relations. Board. In order to vest this court with appellate jurisdiction because of the existence of a so-called "federal question" it is required that the appeal involve the *validity* of a statute of the United States or the *validity* of authority exercised under the laws of the United States. We think it apparent that no such question is here involved. "The necessity for an interpretation and application of the terms of a federal statute does not bring the case within. the state constitutional provision conferring appellate jurisdiction on this court on

the theory that the validity of authority exercised under the laws of the United States is in question." Kansas City Terminal Ry. Co. v. Manion, Mo.Sup., 290 S.W.2d 63, 70.

We have also considered the question as to whether we have appellate jurisdiction because of the amount in dispute. No damages were sought by plaintiff so there was no amount in dispute in that respect. However, it has been said that "When the object of an action is not to obtain a money judgment, but other relief, the 'amount in dispute,' in an appellate jurisdictional sense, must be determined by the value in money of the relief to plaintiff, or the loss to defendant, should the relief be granted, or, vice versa, should the relief be denied." Ingle v. City of Fulton, supra, 260 S.W.2d 666, 668. It does not appear from the evidence that there was any monetary loss to defendants by reason of the entry of the decree. There is evidence from which it may reasonably be said that plaintiff would suffer a large amount of damages in the event of prolonged picketing. However, if the relief sought by plaintiff had been denied, we cannot say with certainty that the resulting damages would have exceeded $7,500, as it is purely speculative to attempt to predict how long the picketing would have continued. It might have been terminated in an hour, or it might have continued for a day or a month or a year. We therefore conclude that it does not affirmatively appear that an amount in excess of $7,500 was in dispute.

This court being without appellate jurisdiction, the cause is transferred to the St. Louis Court of Appeals.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.