SWIFT & COMPANY, a Corporation, and Missouri Pacific Railroad Company, a Corporation (Intervenor), (Plaintiffs) Respondents,

v.

John DOE et al. (Whose Names Are Otherwise Unknown to Plaintiff); Nicholas M. Biassie et al., (Defendants) Appellants.

No. 30118.

St. Louis Court of Appeals.

Missouri.

July 8, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 3, 1958.

Norman W. Armbruster, Harry H. Craig, St. Louis, Wiley, Craig, Armbruster, Schmidt & Wilburn, St. Louis, of counsel, for appellants.

G. Carroll Stribling, Harold A. Thomas, Jr., Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for Swift & Company.

Harold L. Harvey, St. Louis, for Missouri Pacific R. Co.

HOUSER, Commissioner.

This is an appeal from an order of the Circuit Court of the City of St. Louis granting a permanent injunction against picketing. This appeal, originally taken to the Supreme Court, was transferred to this court for decision. The transfer opinion, Swift & Company v. Doe, Mo.Sup., 311 S.W.2d 15, clearly and succinctly states the factual background, pleadings, evidence, issues determined below and those preserved for review and briefed on appeal. Entirely sufficient for our purposes, we refer to, adopt and need not repeat here the first fifteen paragraphs of the transfer opinion written by Commissioner Holman, 311 S.W. 2d loc. cit. 17, 18, 19 and 20.

Appellants-defendants' first contention is that the trial court had no jurisdiction of the subject-matter. The principal question is whether peaceful, orderly stranger picketing of the premises of an employer engaged in interstate commerce, the object of which is to force, coerce and intimidate unorganized employees to join a union or to force, coerce and intimidate the employer, by economic pressure, to force, coerce and intimidate the employees to join a union, is an unfair labor practice within the exclusive jurisdiction of the National Labor Relations Board, withdrawn under the doctrine of pre-emption from the orbit of state control, or whether such picketing is outside the field of federal pre-emption and therefore subject to regulation by a state equity court under state law. Related questions are (1) the effect of the dismissal of charges filed by Swift with NLRB; (2) the right of Missouri Pacific to resort to the state circuit court for injunctive relief.

■ Laws of the Congress made in pursuance of the Constitution of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Article VI. In the field of Federal-State relations we are bound by and must follow the decisions of the Supreme Court of the United States.

■ Under the controlling decisions of the Supreme Courts of the United States and of Missouri the state circuit court lacked jurisdiction to issue the injunction upon the petition of Swift. Congress, intending to reach to the full extent of its power under the Commerce Clause, Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601, has pre-empted the field in labor relations matters affecting interstate commerce and has vested exclu-

sive jurisdiction in NLRB to determine labor disputes involving unfair labor practices which are either protected or prohibited by the Taft-Hartley Act. Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, AFL, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Graybar Elec. Co. v. Automotive, Petroleum & Allied Industries Emp. Union, Local 618, 365 Mo. 753, 287 S.W.2d 794; Swope v. Emerson Elec. Mfg. Co., Mo.Sup., 303 S.W.2d 35; Jack Cooper Transport Co. v. Stufflebeam, 365 Mo. 250, 280 S.W.2d 832.

█ In Weber, supra, the court said, 348 U.S. loc. cit. 481, 75 S.Ct. loc. cit. 488:

"* * * where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

Swift's petition specifically alleged that defendants' acts constituted unlawful picketing in violation of the Taft-Hartley Act. Unfair labor practices reasonably bringing the controversy within the provisions of the Act were charged. Garner; Graybar. Defendants' answer denied these charges. This presented an issue within the legislative scope of the Taft-Hartley Act and it follows that the state circuit court was obliged to decline jurisdiction in deference to NLRB, Garner; Weber; Stufflebeam;

Swope, notwithstanding the same acts are unlawful under state policy.[1]

█ What is the effect of the refusal of the federal administrators to issue a complaint? The specific conduct relied upon as the basis of the charge of an 8(b) (1) (A) [2] and 8(b) (2) [2] violation was that of "Picketing and threatening to picket * * * for the purpose of thereby inflicting such severe economic pressure on said employer through disruption of transportation service, spoilage of product in inventory, and loss of business that such employer will thereby be forced to compel or influence its city salesmen to join the said union which said action on the part of the employer would be in violation of Sections 8(a) (1) and 8(a) (3) of the Act, * * *." The charge did not contain the additional allegation made in the petition in the state circuit court, that the purpose of the picketing was to directly force and influence Swift's city salesmen to join the union. The Regional Director, after carefully investigating and considering the case, refused to file a complaint and dismissed the charges, considering that further proceedings were not warranted "inasmuch as the charge alleges activities that do not fall within the scope of Sections 8(b) (1) (A) or 8(b) (2)." On appeal the General Counsel sustained the ruling of the Regional Director and "concluded that both the legislative history of the Act and decisional precedent determine that * * * the peaceful picketing * * (was) not violative of the Act" and that further proceedings were not warranted. We construe the ruling of the General Counsel to be a final determination that the facts charged did not constitute a violation of the Act * * * that the complaint did not state a case under the Act * * * and

1. In Missouri picketing for the purposes indicated has repeatedly been held to violate the free choice guaranteed to employees by § 29, Art. I, Constitution of Missouri, 1945, V.A.M.S. Swift & Company v. Doe, supra; Quinn v. Buchanan, Mo.Sup., 298 S.W.2d 413; American Hotel Co. of Mo. v. Bartenders' Inter. League of America, Local No. 422, Mo. Sup., 297 S.W.2d 411; Bellerive Country Club v. McVey, 365 Mo. 477, 284 S.W.2d 492; Tallman Co. v. Latal, 365 Mo. 552, 284 S.W.2d 547.

2. Labor Management Relations Act 1947, 29 U.S.C.A. § 158(b) (1) (A), (b) (2).

not (as the union would have us say) that by his ruling the General Counsel or NLRB "sanctioned the picketing," or (as Swift would have us say) that the ruling meant that NLRB had no jurisdiction under the Act, thereby destroying the entire basis for the application of the doctrine of pre-emption and leaving the state circuit court free to exercise its traditional jurisdiction. The ruling of the General Counsel was not a renunciation, disavowal or abnegation of jurisdiction of NLRB to entertain the proceeding if a proper complaint had been filed. It was an exercise of jurisdiction by the officer who is vested with final authority [3] on behalf of NLRB in respect of the investigation of charges and issuance of complaints, whereby he determined that the particular charges did not violate the Act. It was the construction of a statute, involving an exercise of judgment. No appeal from such a ruling by the General Counsel is provided for in the Act,[4] and his ruling, right or wrong, was final and terminated the proceeding. In Graybar the refusal of the General Counsel to issue a complaint, following an investigation of the charges, on the ground that there was "insufficient evidence to warrant further proceedings" was held to constitute an exercise of jurisdiction by NLRB and a disposition of the case on the merits, and his dismissal of the charges was held not to revest jurisdiction in the state circuit court. Here the ruling of the General Counsel constituted an exercise of jurisdiction, and his dismissal of the charges did not revest jurisdiction in the state court. Graybar; Swope; Guss; Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, A.F.L. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; San Diego Bldg. Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.E.2d 618, and Retail Clerks Local No. 1564 (AFL) v. Your Food Stores of Santa Fe, 10 Cir., 225 F.2d 659.

In the absence of a cession of jurisdiction under § 10(a) [5] of the Act [absent here and impossible since Missouri has no labor "agency" as contemplated by § 10(a)] the state circuit court had no jurisdiction to entertain the petition of Swift.

The opinions of the United States Supreme Court in Guss, Fairlawn and Garmon, handed down after the entry of the judgment from which this appeal is taken, indicate that by vesting in NLRB jurisdiction over labor relations in cases affecting interstate commerce Congress has so completely displaced state power to deal with such relations that even in cases where NLRB has declined to proceed (for policy or "other" reasons) the states may act only where NLRB has ceded jurisdiction pursuant to said § 10(a). In Guss the United States Supreme Court recognized the problem involved in cases such as this, where NLRB declines jurisdiction and the states are forbidden to exercise it (the creation of "a vast no-man's-land, subject to regulation by no agency or court"), [353 U.S. 1, 77 S.Ct. 603] but adhered firmly to the view that Congress has expressed its judgment in favor of uniformity and that "its judgment must be respected whatever policy objections there may be to creation of a no-man's-land." The court suggested that Congress can change the situation at will and that NLRB can reduce the area of the no-man's-land "by reasserting its jurisdiction and, where States have brought their labor laws into conformity with federal policy, by ceding jurisdiction under § 10(a)."

Nor under the controlling decisions did the circuit court have jurisdiction to issue the injunction upon the intervening petition of Missouri Pacific. In its original petition (filed before Garner was handed down) Missouri Pacific took the firm position that the picketing violated Taft-Hart-

---

3. Labor Management Relations Act 1947, 29 U.S.C.A. § 153(d).

4. Labor Management Relations Act 1947, 29 U.S.C.A. § 153(d); N.L.R.B. v. Swift

& Co., 8 Cir., 233 F.2d 226; Lincourt v. N.L.R.B., 1 Cir., 170 F.2d 306.

5. Labor Management Relations Act 1947, 29 U.S.C.A. § 160(a).

ley, and in its trial brief forcefully argued that the picketing violated § 8(b) (4) of the Act. After Garner was decided these allegations by leave were eliminated from the railroad's petition but were read in evidence as an admission against interest. Having alleged unfair labor practices under the Act Missouri Pacific is confronted with the language of Weber quoted in the first part of this opinion. Did the facts alleged "reasonably bring the controversy within the sections prohibiting these practices?" Missouri Pacific alleged that the purpose of the picketing was to coerce Swift salesmen to join the union, and to coerce Swift to coerce the salesmen to join, "contrary to the express provisions of the Labor Management Relations Act (Taft-Hartley Act) * * *," and that the members of the union conspired together to prevent the railroad from discharging its statutory duty to render efficient and indiscriminate transportation service to Swift by picketing Swift's plant at the point where the spur tracks enter Swift's premises, whereby the railroad's regular employees (members of three brotherhoods) would not cross defendants' picket line to switch loaded and empty railroad cars in and out of Swift's property, and thus refused to serve the Swift plant. Section 8(b) (4) (A) of the Act [29 U.S.C.A. § 158(b) (4) (A)] provides that it shall be an unfair labor practice

"* * * to induce or encourage the employees of any employer to engage in, * * * a concerted refusal * * * to * * * transport, or otherwise handle * * * any goods * * * where an object thereof is: (A) forcing or requiring * * * any employer or other person to cease * * * transporting * * * the products of any other producer * * * or to cease doing business with any other person * * *."

A railroad is an "employer" within the meaning of § 8(b) (4) (A), for the reasons stated in International Rice Milling Co. v. N. L. R. B., 5 Cir., 183 F.2d 21 and W. T. Smith Lumber Co. v. N. L. R. B., 5 Cir., 246 F.2d 129, entitled as such to protection by NLRB from the kind of unfair labor practices proscribed by § 8(b) (4) (A). Local Union No. 25, International Brotherhood, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. New York, N. H. & H. R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166. Missouri Pacific's intervening petition alleges facts which reasonably bring the controversy within § 8(b) (4) (A). The railroad contends otherwise upon the basis of two administrative rulings of the General Counsel of NLRB,[6] but we adhere to the views expressed in International Rice Milling Co. that the inducement of the employees of a railroad (a neutral employer) not to transport goods, by picketing at the situs of the primary employer's place of business, is prohibited by § 8(b) (4) of the Act, the purpose of which is to protect interstate commerce from injury, impairment, and interruption "by removing obstructions such as the one we have here." And see Wichita Falls & Southern R. Co. v. Lodge No. 1476, Tex.Civ.App., 266 S.W.2d 265, and Penello v. Seafarers' Intl. Union, D.C.Va., 164 F.Supp. 635. NLRB was the exclusive primary tribunal to determine whether the picketing involved constituted an unfair labor practice as to Missouri Pacific and the state circuit court had no jurisdiction to entertain Missouri Pacific's intervening petition for the reasons given and under the authorities cited in connection with our review of the trial court's action on Swift's petition.

Accordingly, the order of the circuit court should be reversed and the permanent decree of injunction dissolved, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

6. Case No. 835, Nov. 6, 1953, 33 LRRM 1037; Case No. K–700, Oct. 15, 1956, 38 LRRM 1469.

The order of the circuit court is, accordingly, reversed and the permanent decree of injunction dissolved.

RUDDY, P. J., ANDERSON, J., and JAMES D. CLEMENS, Special Judge, concur.