**GREAT NORTHERN RAILWAY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 16443.**

United States Court of Appeals
Ninth Circuit.

Nov. 23, 1959.

Woodrow L. Taylor, Clark A. Eckart, Seattle, Wash., for petitioner.

Stuart Rothman, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, Norton J. Come, Herman M. Levy, Attorneys, N.L.R.B., Washington, D. C., for respondent.

Before HAMLEY, HAMLIN, and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

This matter is before us on the petition of Great Northern Railway Company to review and set aside an order of the National Labor Relations Board. In the questioned order the Board dismissed a complaint charging that two unions were engaging in an unfair labor practice proscribed by section 8(b) (4) (A) of the National Labor Relations Act, 29 U.S. C.A. § 158(b) (4) (A).

The precise question presented for our consideration is whether in view of the restrictions placed on the terms "employer" and "employee" in section 2(2) and (3) of the act, 29 U.S.C.A. § 152(2) and (3), a railroad must be denied Board protection from conduct which would otherwise constitute a secondary boycott proscribed by section 8(b) (4) (A) of the act.[1]

---

1. The reference here and throughout this opinion unless otherwise indicated is to section 8(b) (4) (A) prior to its amendment by section 704(a) of the Labor-Management Reporting and Disclosure Act of 1959; Public Law 86–257; 73 Stat. 519; 1959 U.S.Code Cong. and Admin.News, No. 14, Sept. 16, 1959, page 2984. Prior

The complaint in question, based on charges filed by the railroad, was issued against Lumber & Sawmill Workers Local 2409 and Montana District Council, Lumber & Sawmill Workers Unions. The principal allegations of the complaint are summarized in the following two paragraphs.

On or about January 30, 1953, the named unions became engaged in a primary labor dispute with Foley's Mill and Cabinet Works of Helena, Montana. On that date, acting in concert and pursuant to a common plan, the unions caused pickets to patrol at a point where a spur track of the railroad serves Foley. Such picketing took place at such times as the railroad sought to move freight cars over the spur track with freight destined to Foley.

The described union action, it is alleged, induced employees of the railroad to engage in a strike, or a concerted refusal to transport freight or to operate trains to or from Foley over the spur track. The object of such union activity was to force or require the railroad and other employers or persons to cease transportation, handling, or otherwise dealing in the products of Foley, or to cease doing business with Foley.

After proceedings which consumed five and a half years, a trial examiner for the Board rendered an intermediate report and order on November 18, 1958. It was found that the named unions were labor organizations within the meaning of section 2(5) of the act, 29 U.S.C.A. § 152(5). It was also found that Foley's Mill & Cabinet Works was an employer within the meaning of section 2(2) of the act, 29 U.S.C.A. § 152(2), and engaged in commerce within the meaning of section 2(6) and (7) of the act, 29 U.S.C.A. § 152(6) and (7).

Concerning the strike activity referred to in the complaint, the trial examiner found as follows: On January 30, 1953, the employees of Foley became engaged in a primary labor dispute with Foley and began a strike against Foley, which still continues. The strike was accompanied by picketing which at first did not involve the railroad. Picketing involving the railroad, of the kind and with the object described in the complaint, began on February 8, 1953, and still continues.[2] The only purpose of the picketing on the spur track of the railroad was to involve the railroad in the unions' dispute with Foley. Such picketing was therefore not primary in nature, but, except for the question of the railroad's status as discussed below, amounted to a secondary boycott, proscribed by section 8(b) (4) (A) of the act.

All of these findings by the examiner were favorable to the railroad. The unions, however, argued before the examiner that the complaint must nevertheless be dismissed. It was their contention that Great Northern Railway Company, being a railroad company, is not "an em-

---

to the 1959 amendment, and as applicable in this case, section 8(b) (4) (A) read as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

\*   \*   \*   \*   \*

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person."

In section 2(2) it is provided that "the term 'employer' \* \* \* shall not include \* \* \* any person subject to the Railway Labor Act. \* \* \*" In section 2(3) it is provided that "the term 'employee' \* \* \* shall not include \* \* \* any individual employed by an employer subject to the Railway Labor Act. \* \* \*"

2. The examiner's findings speak as of November 18, 1958. At the oral argument before this court, however, we were advised that the strike and picketing in question still continue.

ployer" as defined in the act and that therefore inducement of its train crews was not inducement or encouragement of "employees" of an "employer" within the meaning of section 8(b) (4) (A).

The examiner reviewed this contention at great length in his intermediate report and recommended order, citing and discussing the pertinent court and Board decisions. He expressed the personal view that under the applicable court decisions a railroad is entitled to the protection of section 8(b) (4) (A) under circumstances such as were found to exist here. The examiner, however, pointed out that a majority of the Board had in previous cases adopted the opposite view. The examiner stated that he therefore felt obliged to recommend dismissal of the complaint on the ground that Great Northern Railway Company is not an "employer" and its employees are not "employees" within the meaning of section 8(b) (4) (A).

The Board, on February 13, 1959, adopted the findings, conclusions, and recommendations of the trial examiner and dismissed the complaint.[3] It is this Board order which is here under review.

Under section 8(b) (4) (A) indicated activity is proscribed as a secondary boycott if it utilizes certain described means of accomplishing specified objects. The described means are set out in division (4) of section 8(b) immediately preceding clause (A).[4] The specified objects are set out in clause (A).

■ The specified objects as set out in clause (A) include the forcing or requiring of "any employer or other person" to cease handling or transporting the products of any other manufacturer. Thus, for the purpose of determining whether the unions here had an objective condemned by section 8(b) (4) (A), it is immaterial whether the railroad is an "employer" or its workmen are "employees" within the meaning of the act. They are in any event "persons" as defined in section .2(1), 29 U.S.C.A. § 152(1), which term is referred to in clause (A).[5]

But, in so far as the means of accomplishing a specified object are concerned, subdivision (4) of section 8(b), immediately preceding clause (A), does not expressly refer to the inducing or encouraging of action by "any person." It speaks only of the inducing or encouraging of "the employees of any employer" to engage in forbidden action.

The Board therefore held that since the railroad is subject to the Railway Labor Act, it is not an "employer" and its workmen are not "employees" as those terms are used in section 8(b) (4) (A). In reaching this conclusion the Board relied upon the statutory definition of those terms set out in section 2(2) and (3) of the act.[6] The Board accordingly ruled that the means utilized by the unions to attain their objective of forcing or requiring the railroad to cease handling or transporting Foley products was not forbidden by section 8(b) (4), and that hence no statutorily forbidden secondary boycott occurred.

The Board thus conformed to the view which a majority of that agency has consistently maintained through the years. It is, however, a view which has been rejected by the courts every time the

---

3. Expressing its dissatisfaction with some of the trial examiner's discussion and conclusions, the Board stated in its decision and order:

    "We find, in agreement with the Trial Examiner, that railroad employees are not employees in the meaning of Section 8(b) (4) (A) of the Act. See Superior Derrick Corporation, 122 NLRB No. 6. However, we do not adopt the Trial Examiner's discussion, and conclusions as to the ·import, of various Board and Court decisions regarding the instant issue, nor do we adopt his statement of his personal views as to the proper rule to be derived from these decisions."

4. See footnote 1.

5. Section 2(1) reads as follows:
    "(1) The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

6. See footnote 1.

matter has come before them. In two of these court cases the decision was by a court of appeals—in both instances the Court of Appeals for the Fifth Circuit.

The first of these court of appeals cases is International Rice Milling Co., Inc. v. N.L.R.B., 5 Cir., 183 F.2d 21, decided on June 21, 1950. The Board petitioned for a writ of certiorari but in doing so sought no review of the particular ruling here in question.[7] Hence, although the court of appeals decision was reversed on other grounds (341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277), its decision concerning the point here in issue remained undisturbed.

The second court of appeals case was W. T. Smith Lumber Co. v. N.L.R.B., 5 Cir., 246 F.2d 129, decided June 21, 1957. The Board did not petition for certiorari and, accepting the court's adverse decision, remanded the proceeding to the regional director for a hearing on the merits. Thereafter all parties entered into a stipulation consistent with the decision of the court of appeals.

In both of these Fifth Circuit cases it was held that the words "any employer," as used in section 8(b) (4), are broad enough to include railroads despite section 2(2) and (3). In reaching this conclusion attention was called to the use of the word "any" in the particular context of section 8(b) (4). It was also pointed out that to exclude railroads from the protection afforded by section 8(b) (4) would to a large extent render meaningless and ineffective the words "transport" and "transporting," as they appear in that section. On the other hand,

inclusion of railroads within the protection afforded by this section against the damage caused by secondary boycotts was held in these decisions to be consonant with the general objectives Congress sought to attain.

In the first of these decisions the court carefully delineated the line of demarcation Congress intended to draw between matters affecting railroads which were withheld from Board jurisdiction and matters affecting railroads which were not so withheld. The purpose of section 2(2) and (3) in defining "employers" to exclude persons subject to the Railway Labor Act was to leave railroad employer-employee matters exclusively to the administration of the latter act. It was not intended thereby to deny Board relief under section 8(b) (4) (A) when railroads occupying the position of neutral third parties are adversely affected by activities designed to aid a nonrailroad union in a primary labor dispute with an independent employer.

In two federal district court decisions and in one state court case the same result has been reached on generally parallel reasoning.[8] Two decisions of the Supreme Court of the United States, while dealing with different factual patterns, contain statements which appear to support the view that Congress did not intend to deny railroads protection against what for any other industry would be secondary boycotts.[9]

■ There has not been presented in the instant case any argument of substance in favor of the Board's position which has not already been discussed at

7. See footnote 2 in N.L.R.B. v. International Rice Milling Co., Inc., 341 U.S. 665, at pages 668–669, 71 S.Ct. 961 at pages 962–963, 95 L.Ed. 1277.

8. Knapp v. United Steelworkers of America, D.C.Minn.1959, 179 F.Supp. 90; Penello v. Seafarers' Intern. Union, D.C.E.D.Va.1957, 164 F.Supp. 635; Swift & Company v. Doe, St. Louis, Ct.App., Mo.App.1958, 315 S.W.2d 465. See, also, Wichita Falls & Southern R. Co. v. Lodge No. 1476, International

Ass'n of Machinists, Tex.Civ.App.1954, 266 S.W.2d 265.

9. Local Union No. 25 of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. New York, N. H. & H. R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166; Plumbers, Steamfitters, Refrigeration Petroleum Fitters, and Apprentices of Local 298, A. F. of L. Union v. County of Door, 359 U.S. 354, 79 S.Ct. 844, 3 L.Ed.2d 872. See, also, Douds v. Seafarers' International Union, D.C.E.D.N.Y., 148 F.Supp. 953.

length in one or more of the court decisions referred to above.[10] It will accordingly serve no useful purpose to here restate these same reasons why the Board's petition must be rejected. It is sufficient to state that we concur in the views expressed in the cited judicial decisions.[11]

The order of the Board dismissing the complaint is set aside and the case is remanded to the Board for further proceedings consistent with this opinion. In view of the lapse of time since these proceedings were instituted, it is ordered that the mandate issue forthwith.

10. Most of these arguments have also been dealt with extensively in minority opinions filed in proceedings before the Board. See the dissent of Member Rogers in the Paper Makers Case, 116 N.L.R.B. 267, 280 (1956), and the dissent of Member Jenkins in U and Me Transfer, 119 N.L.R.B. 852, 863.

11. By its 1959 amendment of section 8(b) (4) (A) (see footnote 1), Congress has removed any possible doubt for the future. It has done so by making (4) applicable with respect to "any individual employed by any person engaged in commerce or in any industry affecting commerce," and by making the object (now (4) (ii) (B)) applicable with regard to "any person." As above indicated, even under the section prior to its 1959 amendment, the Board recognizes that in the Fifth Circuit railroads have this protection.