C. Edward KNAPP, Regional Director of the Eighteenth Region of the National Labor Relations Board for and on behalf of the National Labor Relations Board, Petitioner,

v.

UNITED STEELWORKERS OF AMERICA, AFL–CIO, Respondent.

5–59 Civ. No. 44.

United States District Court
D. Minnesota,
Fifth Division.

Sept. 16, 1959.

Henry L. Segal, National Labor Relations Board, Minneapolis, Minn. and John M. Donovan, Duluth, Minn., for petitioner.

Francis X. Helgesen, Minneapolis, Minn., for respondent.

NORDBYE, District Judge.

Order Granting Temporary Injunction

■ This cause came on to be heard upon the verified petition of C. Edward Knapp, Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S. C.A. § 160(*l*) (herein called the Act), pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court has considered the pleadings, evidence, briefs and arguments of counsel, and the entire record in this case, and has made and filed its findings of fact and conclusions of law; and it appearing therefrom to the satisfaction of the Court that there is reasonable cause to believe that respondents have engaged in, and are engaging in, acts and conduct in violation of Section 8(b), subsection (4) (A) of the Act, 29 U.S.C.A. § 158 (b) (4) (A), affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, 29 U.S.C.A. § 152(6, 7), and that such acts and conduct will likely be repeated or continued unless enjoined,

Now therefore, upon the entire record, it is

Ordered, adjudged and decreed that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondent United Steelworkers of America, AFL–CIO, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be, and they hereby are enjoined and restrained from:

1. Picketing Duluth, Missabe, and Iron Range Railway Company, Inc.;

2. In any manner or by any means, including picketing, orders, directions, requests or appeals, engaging in, or inducing or encouraging the employees of Duluth, Missabe, and Iron Range Railway Company, Inc., to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities, or to perform any services, where an object thereof is to force or require Duluth, Missabe, and Iron Range Railway Company, Inc., to cease using, selling, handling, transporting, or otherwise dealing in the products of, or to cease doing business with Pittsburgh Pacific Company, Pacific Isle Mining Company, or Johnson & Moore, Inc.

Findings of Fact and Conclusions of Law

This cause came on to be heard upon the verified petition of C. Edward Knapp, Regional Director of the Eighteenth Region of the National Labor Relations Board (herein called the Board) for a temporary injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), pending the final disposition of the matters involved pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. A hearing on the issues raised by the petition and the answers made thereto was duly held beginning on September 10, 1959. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, and argument and briefs of counsel, and upon the entire record, makes the following:

Findings of Fact

1. Petitioner is Regional Director of the Eighteenth Region of the Board, an agency of the United States, and filed

this petition for and on behalf of the Board.

2. Respondent United Steelworkers of America, AFL–CIO, an unincorporated association, is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act, and at all times material herein has been engaged within this judicial district in transacting business and in promoting the interests of its employee members and of employee members of constituent and affiliated labor organizations.

3. (a) On or about August 13, 1959, Pittsburgh Pacific Company (herein called Pittsburgh), pursuant to the provisions of the Act, filed a charge with the Board alleging *inter alia* that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act.

(b) On or about August 13, 1959, Johnson & Moore, Inc. (herein called Johnson), pursuant to the provisions of the Act, filed a charge with the Board alleging *inter alia* that respondent has engaged in, and is engaging in unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act.

4. The said charges were referred to petitioner as Regional Director of the Eighteenth Region of the Board for investigation and were investigated by petitioner and under his supervision.

5. There is, and petitioner has reasonable cause to believe that:

(a) Pittsburgh, a Minnesota corporation, has its principal office in Hibbing, Minnesota, and is engaged in the business of mining, beneficiating, buying, and selling iron ore. During the past year Pittsburgh shipped iron ore valued in excess of $50,000 to points outside the State. Pittsburgh is lessee of the Julia-Wyoming-Union mine at Franklin, Minnesota (herein called Julia), and the Meadow mine at Aurora, Minnesota.

(b) Pacific Isle Mining Company (herein called Isle) is engaged in the business of mining, beneficiating and selling iron ore. It owns or leases and operates iron ore mines on the Mesabi Range in Minnesota.

(c) Johnson, a Minnesota corporation, has its principal office in Virginia, Minnesota, and is engaged in the earth moving, road building, and iron ore mining business. During the past year Johnson rendered services valued at in excess of $500,000 to a number of business enterprises within the State of Minnesota, which annually ship directly to points outside the State goods valued at in excess of $50,000.

(d) At all times material herein, Johnson has been engaged, pursuant to a contract with Isle, in mining and shipping iron ore from the Wisstar mine at McKinley, Minnesota, leased by Isle.

(e) At all times material herein, the Duluth, Missabe, and Iron Range Railway Company, Inc. (herein called D. M. & I. R.), a common carrier by rail, hauled and hauls iron ore from the said Julia, Meadow, and Wisstar mines.

(f) At all times material herein, respondent has been engaged in a dispute with, and a strike against, Pittsburgh over the terms and conditions of employment of the employees of Pittsburgh employed on the Cuyuna Range in Minnesota.

(g) In furtherance of its dispute with Pittsburgh, referred to in Finding of Fact 5(f) above, respondent at various times since on or about July 29, 1959, has picketed D. M. & I. R. and has orally appealed to, requested, ordered, instructed, and directed employees of D. M. & I. R. and other employers not to haul ore from the Julia, Meadow, and Wisstar mines.

(h) By its acts and conduct set forth in Finding of Fact 5(g) above, and by other means, respondent has engaged in, and has induced and encouraged the employees of D. M. & I. R. to engage in concerted refusals in the course of their employment to transport, or otherwise handle or work on goods, articles, materials, or commodities, or to perform services for Isle, Pittsburgh, or Johnson.

■ An object of the respondent's acts and conduct set forth in Findings of Fact 5(g) and (h) above has been or is to force or require D. M. & I. R. to cease using, selling, handling, transporting, or otherwise dealing in the products of, or to cease doing business with Pittsburgh, Isle, or Johnson.

6. Respondent's acts and conduct set forth in Findings of Fact 5(g), (h), and (i) above, occurring in connection with the operations of Pittsburgh, Isle, and Johnson, have a close, intimate and substantial relation to trade, traffic, and commerce among the several states, and tend to lead and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

7. It may be fairly anticipated that, unless enjoined, respondent will continue or repeat the acts and conduct set forth in Findings of Fact 5(g), (h), and (i) above, or similar or like acts and conduct.

## Conclusions of Law

■ 1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and is empowered to grant injunctive relief under Section 10(l) of the Act.

■ 2. Respondent United Steelworkers of America, AFL–CIO, is a labor organization within the meaning of Sections 2(5), 8(b), and 10(l) of the Act.

3. There is, and petitioner has reasonable cause to believe that:

(a) Pittsburgh, Isle, and Johnson are engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(b) Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act and affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of such practices will impair the policies of the Act as set forth in Section 1(b) thereof. 29 U.S.C.A. § 151(b).

4. To preserve the issues for orderly determination by the Board as provided for in the Act, it is appropriate, just and proper, that, pending the final disposition of the matters involved herein pending before the Board, respondent, its officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with it, be enjoined and restrained from the commission of the acts and conduct set forth in Findings of Fact 5(g), (h), and (i) above, acts in furtherance or support thereof, and like or related acts or conduct, the commission of which in the future may fairly be anticipated from respondent's acts and conduct in the past.

## Memorandum

The evidence is persuasive that the only purpose of respondent in placing pickets at Points 1, 3, 4 and 5, as designated on petitioner's Exhibit 1, was to prevent the employees of the Duluth, Missabe and Iron Range Railway Company, a neutral employer, from performing the employer's duties as a common carrier in moving iron ore from the stockpiles at the Julia, Wisstar and Meadow mines. That is, the picket line at these points is designed and intended by the respondent to cause, and did cause, employees of the railroad to refuse to proceed through the picket line with the railroad equipment necessary to carry out the removal of the iron ore stockpiled near the mines in question. The locating of the pickets at Point 2 of the map and the general conduct of the pickets strongly points to the conclusion that this is not a situation where the picketing is on or near the primary premises of these mines with the incidental result that the railroad employees refuse to cross legitimate picket lines. That is, the places where the pickets are stationed are not at points of ingress and egress to the mines usually utilized by the employees or the public. Here we have a situation where respondent has deliberately selected points of picketing designed to prevent the railroad employees from crossing its picket line. No evidence whatsoever was offered by the respondent to contradict the strong inference which is to be deduced from the evidence in this regard.

The only aim and purpose of the picketing here is to compel the Duluth, Missabe and Iron Range Railway Company to refrain from doing business as a common carrier with the operators of these three mines. Clearly, such picketing under the evidence before the Court comes within the proscribed provisions of Section 8(b)(4) of the Act. In other words, respondent is carrying on a secondary boycott. The sole aim and intent of the picketing is to compel the railway company, a neutral employer, to stop doing business with the operators of these mines.

The only other question of any moment which is presented pertains to the holdings of the Board that railway employers and employees are not within the purview of Section 8(b)(4)(A) of the Act. Therefore, we have the anomalous situation of the general counsel of the Board instituting this proceeding and requesting a temporary injunction although the majority of the Board has, as late as February 13, 1959, adopted the trial examiner's report in Lumber and Sawmill Workers Local Union 2409, et al. v. Great Northern Railway Company to the effect that a railroad was not an employer and its employees are not employees within the meaning of Section 8(b)(4)(A) of the Act. However, it does not seem necessary for this Court to indulge in any long review of the decisions of the Board on this question, or to discuss in detail the reasoning of the Fifth Circuit whose decisions are directly opposed to the Board's construction of the Act. I take it that in this proceeding my duty is to determine whether there is reasonable cause to believe that the Act has been violated. No one questions the jurisdiction of the Court in that regard. Consequently, I must interpret the law as I deem it to be from the Act and from a construction and analysis of the decisions rendered by the Board, and the courts which have directly passed upon the question, including the decision of the Supreme Court in Local Union No. 25 of International Brotherhood of Teamsters, etc. v. New York, New Haven & Hartford R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166. I am strongly of the opinion that the Fifth Circuit in International Rice Milling Co. v. N. L. R. B., 183 F.2d 21, and W. T. Smith Lumber Company v. N. L. R. B., 246 F.2d 129, has arrived at a sound, realistic and impelling construction of the Act when it holds that a railroad is an "employer" within the purview of Section 8(b)(4)(A) of the Act. It seems incredible that Congress intended that, in the public interest, railroads, the most vital transportation medium in the Nation, should be outside the ban of secondary boycotts.

Let this memorandum be made a part of the foregoing findings of fact and conclusions of law.