**UNITED STATES of America**

v.

**Harry DAVIDOFF, Defendant.**

**No. 71–CR–1123.**

United States District Court,
E. D. New York.

June 5, 1973.

Robert A. Morse, U. S. Atty., Eastern District of New York, for United States of America; Denis E. Dillon, Attorney in Charge, Organized Crime Section, Brooklyn, N. Y., Michael B. Pollack, Sp. Atty., Brooklyn, N. Y., of counsel.

Michael J. Gillen, Grunewald, Turk & Gillen, Brooklyn, N. Y., for defendant.

BARTELS, District Judge.

At issue here is whether a union official representing employees governed by the terms and provisions of the Railway Labor Act (45 U.S.C. § 151 et seq.) can be charged with criminal violations of the Taft-Hartley Act, 29 U.S.C. § 186.

Defendant Harry Davidoff, secretary-treasurer of Local 295 of the International Brotherhood of Teamsters (Local 295), was charged in a twenty-five count indictment with violation of both the Hobbs Act, 18 U.S.C. § 1951, and the Taft-Hartley Act, in that he illegally acquired for himself and his family free airline tickets from the officers of Trans-Caribbean Airways, by wrongfully threatening labor disputes, work stoppages and other labor troubles. At the conclusion of the Government's case, the defense moved for a judgment of acquittal on the Hobbs Act count charging that the Government had completely failed to prove the essential elements of the crime, in which motion the Government joined. Accordingly, the Court dismissed Count 1 of the indictment.

After most of the evidence was adduced and the trial virtually completed, defendant belatedly moved for a dismissal of Counts 2 through 25 under Rule 12, F.R.Crim.P. on the ground that the Taft-Hartley Act did not apply to an official of a union subject to the jurisdiction of the Railway Labor Act. Decision was reserved and on December 14, 1972, a jury found defendant guilty on twenty-one counts of requesting and receiving airline tickets in violation of 29 U.S.C. § 186(b). Thereupon the motion to dismiss for lack of jurisdiction was renewed.

Section 186(b) of the Taft-Hartley Act (29 U.S.C. § 186(b)) (Act) makes it a misdemeanor "for any person to re-

quest, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value" from an employer in an industry affecting commerce, where the union official represents employees of that 'employer. Section 152(2) of the Act defines "employer" to include "any person acting as an agent of an employer, directly or indirectly, *but shall not include . . . any person subject to the Railway Labor Act*, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." (Emphasis added.) And Section 152(3) of the Act defines "employee" as "any employee, and shall not be limited to the employees of a particular employer . . . *but shall not include . . . any individual employed by an employer subject to the Railway Labor Act, as amended from time to time . . .*" (Emphasis added.)

The Railway Labor Act (45 U.S.C. § 151 et seq.) includes within its coverage "every common carrier by air engaged in interstate or foreign commerce . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers . . .." 45 U.S.C. § 181. At the trial it was established beyond question that Trans-Caribbean Airways was an air carrier subject to the Railway Labor Act, and that defendant Davidoff was secretary-treasurer of Local 295, a union also subject to the same Act. In the face of explicit definitional exclusions in Section 152(2)

and (3) of "employers" and "employees" governed by the Railway Labor Act from the terms and conditions of the Taft-Hartley Act, the conclusion that Davidoff is not subject to the proscriptions of Section 186(b) of the Act seems inescapable.

In order to comprehend this anomalous exception, it is necessary to examine the Labor Management Relations Act (Taft-Hartley Act), 61 Stat. 136–161, 29 U.S.C. §§ 151–166, enacted in 1947. Section 302(a) and (b) of that Act, in substance, specifically proscribed an employer from paying or delivering, and an employee from accepting or receiving, money or anything of value. In Section 2 of that Act (29 U.S.C. § 152) the term "employer" and the term "employee" were defined and in both instances an employer and an employee subject to the Railway Labor Act were expressly excluded from the proscription of the Act.

In 1959 subsections (a), (b) and (c) of Section 302 of the Taft-Hartley Act were amended by Section 505 of the Labor-Management Reporting and Disclosure Act (LMRDA), 73 Stat. 519, 29 U.S.C. § 402 et seq., and as amended became Section 186(b) of 29 U.S.C., under which Davidoff was convicted. What is crucial in the amendment set forth in the LMRDA in 1959 is the definitions contained in Section 3 of that Act. In defining "employer" in subsection (e) and the term "employee" in subsection (f), Section 3 expressly excepts from the application of its definitions Section 505, which included the amendment to Section 186(b).[1] Thus, we are remand-

---

1. Section 3 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 402, P.L. 86–257, reads as follows:
"For the purposes of titles I, II, III, IV, V (*except section 505*), and VI of this Act—

. . . . . .

(c) 'Industry affecting commerce' means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry 'affecting commerce' within the meaning of the Labor Management Relations

Act, 1947, as amended, or the *Railway Labor Act*, as amended.

. . . . . . .

(e) 'Employer' means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or condi-

ed to the original definitions of "employer" and "employee" contained in Section 152(2) and (3) of the Taft-Hartley Act, as quoted above, for the purpose of defining the scope of 29 U.S.C. § 186. Consequently, there is nothing new in the Congressional exception of railway employers and employees from the scope of the illegal behavior proscribed in Section 186(b), although such exception is illogical and inequitable.[2]

The Government argues that these exceptions were meant to cover only the internal employer-employee relationships and the traditional labor-management relations in the railway and airline industries, and not subsequent labor codifications involving sanctions for criminal activities of either employer or employee. This argument cannot be sustained by any reasonable statutory interpretation. It has long been recognized that the Railway Labor Act was enacted as a comprehensive statutory scheme for the peaceful resolution of labor disputes within the railway and airline industries. It was enacted before either the Taft-Hartley Act or the LMRDA, neither of which was intended to impinge upon or cover the same ground. Apparently it was for this reason that Congress carved out of both the Taft-Hartley Act and the LMRDA the exceptions in the definitions of "employer" and "employee" above described. If Congress by mistake went too far in its exceptions in 1947, its exceptions from the illegal behavior proscriptions in 1959 were intentional. In enacting the LMRDA Congress did not limit its legislation to the internal affairs of labor unions but rewrote several provisions of the Taft-Hartley Act, placing tighter limitations on secondary boycotts, organ-

tions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) 'Employee' means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act." (Emphasis added.)

Section 505, 29 U.S.C. § 186, in pertinent part, reads as follows:

"SEC. 505. Subsections (a), (b), and (c) of section 302 of the Labor Management Relations Act, 1947, as amended, are amended to read as follows:

'SEC. 302. (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

'(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

'(2) to any labor organization, or any officer or employee thereof, which rep-resents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

'(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

'(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

'(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a).' "

2. It should be noted that employers and employees not subject to the Railway Labor Act may be in a position to attack the constitutionality of the statute as a violation of their right to the equal protection of the laws.

izational picketing and hot cargo agreements, and at the same time extended the coverage of Section 302 of that Act (29 U.S.C. § 186) by prohibiting payments by employer associations, labor relations experts and advisers, and anyone who "acts in the interests of the employer," adding at the same time several new categories of prohibited recipients. In enacting LMRDA Congress did not exclude in the definitional provisions of Section 3 railway employers and employees from the applications of Titles I, II, III, IV and V of the Act, thus automatically subjecting such employers and employees governed by the Railway Labor Act to the provisions requiring disclosure of gifts from the employer to any union representative. Obviously, the Congressional exclusion of railway employers and employees from the application of Section 186(b) was not accidental.

The Government complains that it is unfair and unwise to exempt employers and employees subject to the Railway Labor Act from the coverage of 29 U.S.C. § 186, since there is nothing in that Act which purports to protect labor negotiations from the unethical conduct and activities proscribed by the provisions of the LMRDA. While the validity of this complaint is undeniable, it is not within the power of this Court to substitute its judgment for the Congressional judgment in the face of the plain words of the statute which is free from any ambiguity, historically or otherwise. Helvering v. City Farmers Bank, 296 U. S. 85, 56 S.Ct. 70, 80 L.Ed. 62 (1935); Fisher Flouring Mills Co. v. United States, 270 F.2d 27 (9th Cir. 1958). Moreover, if the statutes were not free from ambiguity, the Court would be obligated to construe a criminal statute strictly, and the result would be the same. See, e. g., United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

In support of its position the Government relies upon two cases, Local Union No. 25 of International Brotherhood of Teamsters v. New York, New Haven and Hartford Railroad, 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166 (1956), and Stone v. United States, 153 F.2d 331 (9th Cir. 1946). This reliance is misplaced. It is true that Local Union No.25 did not involve a dispute between the railway employer and its employees but a secondary boycott by an outside union. In holding that this was an unfair labor practice subject to the jurisdiction of the National Labor Relations Board, the Court relied upon the definition in the Board's Rules and Regulations of the term "any person" who might file a charge. It reasoned that although Section 152(2) of the Taft-Hartley Act excluded employers subject to the Railway Labor Act, such employer was not excluded from the Act's definition of the term "person," stating:

"But we do not think that by so doing Congress intended to divest the N.L. R.B. of jurisdiction over controversies otherwise within its competence solely because a railroad is the complaining party. Furthermore, since railroads are not excluded from the Act's definition of 'person,' they are entitled to Board protection from the kind of unfair labor practice proscribed by § 8(b)(4)(A)." (350 U.S. at 160, 76 S.Ct. at 231).

In Stone certain dining-car employees were indicted for embezzling money from railroad passengers in violation of 18 U.S.C. § 409. Defendants argued in Stone that since they were subject to the terms of the Railway Labor Act, they were somehow exempt from the operations of the criminal statute. The Ninth Circuit rejected the claim that embezzlement by employees is a mere labor dispute, and held defendants subject to the proscription of the criminal statute. Both of these cases are inapposite not only because in neither was there an explicit statutory exclusion of railway employers and employees in the pertinent definitional section of the statute cided before Congress amended Section 302 of the Taft-Hartley Act in 1959.

For the reasons above set forth, the Court is compelled to grant defendant's motion to dismiss the remaining counts of the indictment. So ordered.