Accordingly, the petition for a writ of habeas corpus is denied.

**Alvin BLYER, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

No. 87 C 0870.

United States District Court, E.D. New York.

March 30, 1987.

N.L.R.B. (Alison C. Fairbanks, of counsel), Brooklyn, N.Y., for petitioner.

Lowenthal and Lippman (Herbert Lippman, of counsel), New York City, Wilma B. Liebman, Washington, D.C., for respondent.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioner, Regional Director of the National Labor Relations Board (the Regional Director), brought this proceeding under Section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*), for an injunction pending the board's disposition of alleged unfair labor practices.

Korean Air Lines Co., Ltd. (Korean Air Lines) and AMR Services Corporation (AMR) filed charges of unfair labor practices against Respondent, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America. The charges alleged that Respondent is engaged in secondary picketing in violation of Section 8(b)(4)(i) and (ii), subparagraph (B) of the National Labor Relations Act. 29 U.S.C. § 158(b)(4)(i) and (ii), subparagraph (B).

The issue is whether the court has jurisdiction under the National Labor Relations Act to issue the injunction. Respondent urges chiefly that, even if the facts alleged by the Regional Director are true, the dispute is governed not by the National Labor Relations Act but by the Railway Labor Act, which does not prohibit "secondary picketing."

The papers set forth, in substance, the following undisputed pertinent facts. Korean Air Lines is located in Seoul, Korea, and in various places in the United States including Building 260 at J.F.K. International Airport (JFK Airport). AMR, a Texas corporation, is also located at that airport where it provides, among other things, cargo freight handling. Until midnight February 28, 1987 Triangle Aviation Services (Triangle) provided cargo freight handling to Korean Air Lines at Building 260. As of that date Korean Air Lines did not renew its contract with Triangle, and contracted with AMR to perform the services Triangle had previously rendered. Korean Air Lines and AMR are Railway Labor Act "carriers," but Triangle is not.

The International Brotherhood of Teamsters, Airline Division (Airline Division), a subordinate trade division of Respondent, is the certified bargaining representative pursuant to the Railway Labor Act of about 25,000 airline industry employees, including many performing cargo handling duties at JFK Airport. Local 851 of Respondent (not the Airline Division) has been the recognized collective bargaining repre-

sentative of some sixty Triangle employees who handled cargo for Korean Air Lines.

After it became clear that Triangle would cease to render the cargo handling services and the sixty employees would lose their jobs the Director of the Airline Division wrote to Korean Air Lines seeking a meeting "to discuss job protection for our members." Having received no satisfaction the Airline Division picketed Building 260 at JFK Airport, using picket signs stating in substance that Korean Air Lines was unfair because it refused to honor the contract with Respondent and that the union members wanted their jobs back.

Section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*), provides, in pertinent part, that if after investigation of an unfair labor charge against any person the Regional Director "has reasonable cause to believe such charge is true" he shall petition the district court for injunctive relief pending final adjudication by the National Labor Relations Board. The court then has jurisdiction to grant such injunctive relief "as it deems just and proper."

Section 8(b)(4)(i) and (ii), subparagraph (B), provides, so far as relevant, that it shall be an unfair labor practice for a "labor organization" to induce or encourage "any individual employed by any person" engaged in commerce to engage in "a refusal in the course of his employment" to handle any goods or perform any services where "an object" is forcing any "person" to cease doing business with any other person or forcing any other employer to bargain with a labor organization not certified as representative of the employer's employees, provided that nothing in the clause is to be construed to make unlawful otherwise lawful primary picketing.

The Airline Division argues that this prohibition against "secondary picketing" is inapplicable because (a) its picketing is primary and (b) even if its picketing of Korean Air Lines is "secondary," the dispute is governed by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, which does not prohibit such activity. Thus the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, apply to preclude the court from exercising jurisdiction to issue an injunction.

As the court in *Marriott In-Flite Services v. Local 504, Air Transport Division,* 557 F.2d 295 (2d Cir.1977), recognized, a literal reading of the National Labor Relations Act, even as amended in 1959, would exempt Railway Labor Act unions from the prohibition against secondary picketing. Section 8(b)(4)(B) makes it an unfair labor practice for a "labor organization" to engage in a secondary boycott. Section 2(5) defines a "labor organization" as any organization in which "employees" participate and which exists for the purpose of dealing with "employers" concerning labor matters. Section 2(2) defines an "employer" so as not to include "any person subject to the Railway Labor Act." Section 2(3) defines an "employee" as not including any individual "employed by an employer subject to the Railway Labor Act." The National Labor Relations Act thus excludes a Railway Labor Act union from the definition of a "labor organization."

Despite this explicit language the opinion in the *Marriott* case, pointing to the oft quoted language of L. Hand, C.J., in *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944) (concurring opinion), *aff'd sub nom., Gemsco, Inc. v. Walling,* 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945), that there "is no surer way to misread any document than to read it literally," and finding "unequivocal" the legislative intent to bring Railway Labor Act unions within the secondary boycott ban, decided that the statute did not mean what it said and, determining that the 1959 amendments bespoke a "national labor policy against secondary boycotts" and "were explicitly intended to end the exemption from this prohibition enjoyed by" Railway Labor Act unions, 557 F.2d at 298–99, held that the injunction against a Railway Labor Act union should issue.

The case involved picketing at JFK Airport of KLM Royal Dutch Airlines after it closed its commissary and hired an independent contractor to take over the commissary and prepare meals. The picketing by

the union, which represented KLM employees, prevented the use of the commissary.

Respondent, citing legislative history, 105 Daily Congressional Record 5974, April 24, 1959, II Leg. Hist. of the Labor Management Reporting and Disclosure Act of 1959, p. 1197, not mentioned in the opinion in the *Marriott* case, argues that the 1959 amendments were designed merely to protect "neutral" third parties subject to the Railway Labor Act from secondary boycotts designed to help a union not subject to that Act in its primary dispute with an employer also not subject to that Act. *See Great Northern Railway Co. v. NLRB,* 272 F.2d 741, 745, 746 n. 11 (9th Cir.1959). Whatever the merits of this argument, it is not open to this court to reject the premise of the Second Circuit's opinion.

However, the Court of Appeals for the Second Circuit has evidently not taken the *Marriott* decision to mean that Railway Labor Act unions may no longer engage in any secondary picketing. In *Consolidated Rail Corporation v. Brotherhood of Maintenance of Way Employees,* 792 F.2d 303 (2d Cir.1986), the court declined to enjoin secondary picketing by a Railway Labor Act union against other railroads in aid of its primary dispute with a railroad. Indeed, in the *Marriott* case itself the opinion includes a final footnote stating that the court "only" decides that the section 8(b)(4) prohibition against secondary picketing "is brought into play when one of the parties involved in a dispute is subject to the" National Labor Relations Act. 557 F.2d at 300, n. 11.

In the present case all the parties to the dispute, the Airline Division, Korean Air Lines and AMR, are subject to the Railway Labor Act. The union is not seeking by its secondary picketing to apply pressure to or to affect any person subject to the National Labor Relations Act. The *Marriott* case holding is thus distinguishable.

The Regional Director contends that the court should issue an injunction because the picketing is on behalf of the employees of Triangle, which is not subject to the Railway Labor Act.

Presumably Respondent would be satisfied if the manner in which the employees it represents got their jobs back was their rehiring by Triangle. But those individuals are potentially future airline employees of some employer other than Triangle. Respondent's objective would be as well served if Korean Air Lines contracted with another employer subject to the Railway Labor Act and that employer undertook to hire the employees laid off and represented by Respondent. The picketing is thus on behalf of the employees not Triangle.

In any event it is desirable that the jurisdictional line between the National Labor Relations Act and the Railway Labor Act should be marked out by less subjective factors than the intent of the union conducting the picketing. The objective fact is that the Airline Division, Korean Air Lines and AMR are all subject to the Railway Labor Act. Only Railway Act carriers are the targets of the picketing. The court holds that that is enough to make the dispute subject to the Railway Labor Act.

The Regional Director argues that if there is "reasonable cause" to believe he is correct in his view of the law the court should acquiesce in that view. No doubt the court should give significant weight to the Regional Director's judgment where jurisdiction of the National Labor Relations Board turns on complex facts or even on inferences which that board is peculiarly competent to draw. But this case concerns not the board's discretionary jurisdiction but a legal decision as to which of two statutory schemes applies. The parties have cited no authority intimating that the court should defer to the Regional Director's opinion as to that legal issue. On the contrary, the language used by Friendly, C.J., in *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union,* 494 F.2d 1230, 1237–38 (2d Cir. 1974), suggests quite the opposite.

The court need not decide the other matters raised by Respondent.

Injunction denied. So ordered.