**AMR SERVICES CORPORATION ("AMR"), Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS ("IBT"); International Brotherhood of Teamsters Airline Division ("IBT Airline Division"); Local 851, International Brotherhood of Teamsters ("Local 851, IBT"); William F. Genoese, individually and as Director of IBT Airline Division; Jackie Presser, individually and as General President of IBT, Defendants.**

No. 87 C 1144.

United States District Court, E.D. New York.

April 22, 1987.

---

Seyfarth, Shaw, Fairweather & Gerald-son (Eric Rosenfeld, of counsel), New York City, for plaintiff.

Lowenthal and Lippman (Herbert Lippman, of counsel), New York City, Wilma B. Liebman, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, AMR Services Corporation (AMR), brought this action under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, and pendent state law, seeking an injunction and damages. AMR has moved for a preliminary injunction restraining defendants from picketing allegedly in violation of section 2, Ninth, of the Railway Labor Act. 45 U.S.C. § 152, Ninth.

Most of the relevant facts are set forth in this court's memorandum and order dated March 30, 1987, entered in the related case of *Blyer v. International Brotherhood of Teamsters*, 656 F.Supp. 1158 (1987), familiarity with which is assumed. In substance, the case arises out of the decision of Korean Air Lines Co., Ltd. (Korean Air Lines) to terminate its cargo freight handling contract at J.F.K. International Airport (J.F.K.) with Triangle Aviation Services (Triangle) as of February 28, 1987 and to contract for such services with AMR. Defendant Local 851, International Brotherhood of Teamsters (Local 851), has been the recognized collective bargaining representative for the sixty or so Triangle employees handling cargo for Korean Air Lines. Certain AMR employees now performing such services are represented by the Transport Workers Union of America, AFL–CIO (TWU), not a defendant here. None is represented by any of the defendants.

The complaint alleges in pertinent part that, starting February 27, 1987, all three union defendants, as joint venturers with and agents of each other, have engaged in illegal picketing at Building 260 at J.F.K., the Korean Air Lines cargo terminal building where AMR provides its services. AMR charges that this picketing violates section 2, Ninth, of the Railway Labor Act because it is being conducted for recognitional and organizational purposes, that is, to force AMR to recognize and bargain with defendants as the representative of its employees.

Two of the defendants, International Brotherhood of Teamsters (Teamsters) and its Airline Division (Airline Division), reply that the picketing is legal and not enjoinable because it is primarily directed at Korean Air Lines for its refusal to protect the jobs of the Triangle employees. These two defendants claim that to the extent there is a controversy with AMR, it is solely over AMR's alleged failure to maintain "area standards" in its employee compensation package. They disavow any current intention to seek to represent AMR's employees and say that the picketing is not directed to that end.

The third union defendant, Local 851, apparently has not been properly served with the summons and complaint in this action. In any event, its counsel represents that Local 851 disclaims any participation in the current picketing.

Section 2, Ninth, of the Railway Labor Act provides in pertinent part:

If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall

be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier (45 U.S.C. § 152, Ninth).

■ The Second Circuit has held that this section provides the sole and mandatory means for resolving disputes over representation. *Summit Airlines, Inc. v. Teamsters Local Union No. 295*, 628 F.2d 787 (2d Cir.1980). A union thus is not free to circumvent the procedures of section 2, Ninth, by resorting to picketing or other self-help methods designed to coerce a carrier to recognize the union as the collective bargaining representative of its employees. *Id.* An injunction will issue in such instances, notwithstanding the dictates of the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.*, because the picketing violates a positive statutory command to mediate such disputes. *See Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad*, 353 U.S. 30, 41, 77 S.Ct. 635, 640–41, 1 L.Ed.2d 622 (1957); *Summit, supra*, 628 F.2d at 795.

The issue presented here is whether there is a "dispute" over representation within the meaning of section 2, Ninth. AMR contends there is because the defendant unions are actively seeking to become the collective bargaining representative of its employees.

AMR points to several events as showing that this is defendants' purpose. On February 26, 1987, defendant William F. Genoese, Director of defendant Airline Division, telephoned Richard M. Janisse, President of AMR. Although much of the content of that conversation is in dispute, Genoese admits that he said something to the effect that "you are taking over some work that the Teamsters are performing and I want to know what you are going to do with our employees in reference to the Korean contract at J.F.K.?" On February 28, 1987 Genoese wrote to Charles A. Pasciuto, the Vice President for Employee Relations at American Airlines, Inc., a subsidiary (as is plaintiff) of AMR Corporation. In his letter Genoese asked for information about AMR and any labor agreement it has with a union representing its employees.

Subsequently, Genoese, on behalf of the Airline Division, wrote and distributed two leaflets. The first, dated March 2, 1987, is addressed to "all Airline Division locals," and primarily concerns itself with disparaging AMR, the TWU and the "inferior wages and benefits" of their labor agreement. The memo terms the agreement "a disgrace to the labor movement" and announces defendants' intention "to expose this cozy arrangement" that enables AMR to make "low-ball bids" for airline contract work. In its penultimate paragraph, the memo states: "To protect the rights of all airline workers, we must start organizing AMR Services. Otherwise, AMR Services and the TWU can bring all airline workers down."

The second leaflet is dated April 13, 1987, and addressed to "all Airline Employees at J.F.K." It also speaks of the inferior nature of the AMR and TWU contract and terms the agreement a "TWU sellout" that "jeopardiz[es] the wages, benefits and working conditions of all airline employees." The memo goes on to specify many of the so-called "low-ball" provisions of the labor contract at issue.

Plaintiff alleges that both leaflets were distributed throughout J.F.K., but has provided no evidence of distribution directly to AMR employees.

Defendants disclaim any present objective to attain recognition and urge that their activities are consistent with two other purposes: trying to protect the Korean Air Lines jobs of the Triangle employees and publicizing AMR's payment of wages and benefits below the prevailing area standards. Defendants say that those purposes are manifest from various objective facts. On February 24 and 28, 1987 Genoese made demands on Korean Air Lines for a meeting to discuss job protection for the Triangle employees. On April 9, 1987

defendant Jackie Presser, General President of the Teamsters, sent cables to the same effect to Korean Air Lines' chief executive officer in Seoul, Korea, and to others in Korea. Defendants' picket signs at Building 260 do not mention AMR, but are addressed to Korean Air Lines. Thus, say the defendants, their primary dispute is with Korean Air Lines, not AMR.

Their controversy with AMR, according to defendants, extends only to the fact that AMR, through its contract with the TWU, pays substandard wages and benefits that threaten to erode the availability of airline industry jobs at the area standard. Defendants say that Genoese's February 28, 1987 letter to Pasciuto is consistent with investigating the nature of AMR's compensation package and that his subsequent leaflets are consistent with publicizing its inferior nature.

In urging that the court should not infer that defendants have a current purpose to organize AMR's employees, defendants note that all traditional indicia of organizational efforts are missing. Defendants have not solicited union authorization cards from those employees or otherwise contacted or attempted to organize them. Nor is there any claim that defendants have addressed AMR management to demand recognition, to ask for the signing of a Teamster contract, or to offer to cease picketing in return for such a contract.

Defendants argue that the single sentence in the March 2 memorandum that reads "we must start organizing AMR Services" is no more than exhortation, looking towards a future organizing campaign and is an insufficient basis from which to infer a present recognitional objective.

■ The court agrees. Defendants' actions cannot fairly be deemed to show a present purpose to seek recognition. This case is distinguishable from *Summit, supra,* where the union, prior to picketing, had solicited and received authorization cards from employees and had held discussions with management in which it had urged voluntary recognition of the union or, alternatively, an election under the supervision of a neutral observer.

More on point is *Federal Express Corp. v. Teamsters Union, Local No. 85,* 617 F.2d 524 (9th Cir.1980), where the court refused to enjoin a union's picketing protesting Federal Express' failure to conform its employee compensation package to prevailing area standards. The court held that since the union did not purport to represent any employees, there was no applicable procedure under the Railway Labor Act to which the union had to submit.

■ Absent a claim by a union that it represents the carrier's employees and absent objective evidence that it has informed those employees or their employer of a present purpose to represent such employees, the court does not believe that a "dispute" arises "among a carrier's employees as to who are the representatives of such employees ..." within the meaning of section 2, Ninth. 45 U.S.C. § 152, Ninth. The National Labor Relations Board has used such objective criteria to determine whether there has been an "unfair labor practice" under section 8(b)(7), the recognitional picketing provision, of the National Labor Relations Act. 29 U.S.C. § 158(b)(7). *See, e.g., Dawidoff v. Over-the Road, etc., Local Union No. 544,* 736 F.2d 465 (8th Cir.1984); *San Francisco Local Joint Executive Board of Culinary Workers v. NLRB,* 501 F.2d 794, 799–800 & n. 11 (D.C.Cir.1974).

■ The language of section 2, Ninth, makes it clear that its mediation procedures do not apply merely because a union may eventually seek to represent a carrier's employees, or through picketing may be laying a foundation for future organizational efforts. That section contemplates that the National Mediation Board, after investigation, will "certify ... within thirty days ... the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute...." 45 U.S.C. § 152, Ninth. Congress could hardly have intended that the National Mediation Board participate in such a certification process where a union has not somehow advised either the employer or its em-

ployees of the union's present desire to represent them.

Presumably, a union is always interested in organizing employees. Here, it is certainly plausible that defendants might deem a solution to the perceived threat AMR poses to area standards to be an organization of its employees under a Teamster contract. But to call the current controversy a "dispute" over representation within the meaning of section 2, Ninth, would subject to judicial scrutiny, as potentially violative of the Railway Labor Act, a host of union activities aimed at disparaging rival unions. Any criticism of an employer's compensation package or of another union's concessions to management can be characterized as paving the way for future organizational efforts.

■ In the absence of any conduct violative of the Railway Labor Act, the prohibitions of the Norris-LaGuardia Act apply to bar an injunction. The Railway Labor Act exception to the Norris-LaGuardia Act is narrow, and only applies where an injunction is the sole practical, effective means of enforcing the procedural duties that the Act has imposed. *Chicago & North Western Railway Co. v. United Transportation Union*, 402 U.S. 570, 581–84, 91 S.Ct. 1731, 1737–39, 29 L.Ed.2d 187 (1971); *Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees*, 792 F.2d 303, 304 (2d Cir.1986).

■ The unavailability of an injunction against picketing may leave AMR without effective recourse against conduct it considers to be highly disturbing. But this result follows from the language of the Railway Labor Act and its place in the scheme of federal labor statutes. That act does not provide a means of redress for every type of picketing that a carrier deems objectionable, or that the National Labor Relations Act, in its more comprehensive treatment of labor relations, might bar. *See Central Vermont Railway, Inc. v. Brotherhood of Maintenance of Way Employees*, 793 F.2d 1298 (D.C.Cir.1986).

■ AMR may not have an injunction based on state law. Controversies subject to the Railway Labor Act, even where, as here, it "is wholly inexplicit as to the scope of allowable self-help," are generally "protected against state proscription." *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 391, 393 & n. 25, 89 S.Ct. 1109, 1122–23, 1123–24 & n. 25, 22 L.Ed.2d 344 (1969). Moreover, notwithstanding AMR's attempt to depict defendants' conduct as a tortious interference with its contract with Korean Air Lines, the present controversy plainly involves a "labor dispute" within the meaning of sections 13(a) & (c) of the Norris-LaGuardia Act. 29 U.S.C. § 113(a) & (c). *See, e.g., Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products, Inc.*, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63 (1940). This court is thus without jurisdiction to grant injunctive relief. 29 U.S.C. §§ 101, 104(e) & (f).

The injunction is denied. So ordered.